IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| UNITED STATES OF AMERICA | ) | Criminal Number :2:11-472 |
|---|---|---|
| | ) | |
| -versus- | ) | **Government's Change of** |
| | ) | **Plea Hearing Memorandum** |
| | ) | |
| **SHAUN DANIEL DUBIS** | ) | |

*I.     Summary of Charges and Statutory Penalty*

The defendant is pleading guilty to Counts 1, 58, 60 and 70 of the Third Superseding Indictment. With regard to the Count 1, the Defendant is pleading guilty to a lesser included offense, that is, conspiring to knowingly, intentionally and unlawfully possess with intent to distribute and distribute a quantity of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(C), all which is in violation of Title 21, United States Code, Section 846.

The Defendant is also pleading guilty to Counts 58, 60 and 70. Counts 58, 60 and 70 charge that on or about the dates set forth in each count (Count 58: January 23, 2011; Count 60 January 27, 2011; and Count 70: March 12, 2011) in the District of South Carolina and elsewhere, the defendants KENNETH LAMONT WILLIAMS and **SHAUN DANIEL DUBIS** knowingly and intentionally did use a communication facility, that is, a telephone, to facilitate the commission of a felony under the Controlled Substances Act, to wit: conspiracy to distribute, possession with intent to distribute, and distribution of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. These are violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

The defendant has no felony convictions for drug offenses. The penalty for Count 1 (a Class C felony pursuant to 18 USC §3559(a)(3)) is a potential term of imprisonment for not more than 20 years and/or a fine of $1,000,000.00, a term of supervised release for 3 years, and a special assessment of 100.00 (see 18 USC §3013(a)(2)(A)).

The penalty for Counts 58, 60 and 70 (a Class E felony pursuant to 18 USC §3559(a)(5)) is a potential term of imprisonment for not more than 4 years (21 USC §843(b)), a fine of $250,000.00 (18 USC §3571(b)(3)), a term of supervised release for 3 years (18 USC §3583(b)(2)), and a special assessment of 100.00 (see 18 USC §3013(a)(2)(A))..

## II.     *Representation of Parties*

The government is represented by Assistant United States Attorney Sean Kittrell and Special Assistant United States Attorney Stephanie Linder. The Defendant is represented by J. Mitchell Lanier, Esquire. The investigation was conducted by the Drug Enforcement Administration (Special Agent James Duffy and Task Force Officer Jake Grill of the City of Charleston Police Department); the Bureau of Alcohol, Tobacco, Firearms, and Explosives (Special Agent John Schroepfer); and the Federal Bureau of Investigation (Special Agent Ed Klimas).

## III.    *Factual Background of Investigation*

The Bridgeview Village Apartment complex is on the peninsula's eastern edge, at the northern part of the City of Charleston. In spite of its location, gangs throughout the city call this area the "Westside." It is isolated from the rest of the urban community, and is a low-income, quasi-public, family housing complex subsidized by the federal government's Department of Housing and Urban Development. It was previously named "Bayside" (a term which is commonly used today). Within the complex are multi-unit apartments and this part of

Charleston has one of the highest crime rates of any neighborhood in the city. Based on the high level of violence in Bayside, during the fall of 2009, the City of Charleston Police Department; the Drug Enforcement Administration; the Bureau of Alcohol, Tobacco, Firearms, and Explosives; the Federal Bureau of Investigation; the United States Attorney's Office, and the Solicitor's Office for the Ninth Judicial Circuit created an ad hoc task force to conduct a joint investigation into the organized drug and firearm-related, ongoing criminal activity within the apartment complex. A number of undercover operations were undertaken, various individuals were interviewed (including cooperating defendants, and informants as well as sources of information), wiretaps were obtained for various target phones, and search warrants were executed.

### IV. *Factual Information Concerning Count 1 (21 USC §846)*

As a result of this effort and the subsequent investigation, it was determined that there was a specific and loosely organized drug distribution network that had been operating within the complex itself. In 2009, the individual who was at the top of the distribution chain in Bridgeview was Jamar Gathers (also known as "Juice"). Information obtained during the investigation linked Gathers to the Bloods gang and also connected him to a Charleston gang known as B-Mob. Gathers sold crack and heroin. With regard to the heroin, his source of supply was Gary Smith. On August 21, 2010, Gathers was murdered in the breezeway of the downstairs area of Building 105 in the Bridgeview Village Apartments. After the murder, because of the increased police presence in Bayside, a number of the dealers scattered and sold in other locations in the Charleston area. The investigation continued, more undercover operations were conducted targeting street as well as retail dealers and more wiretaps were obtained. Gary Smith was confirmed as being the source of supply for a substantial amount of

the heroin in the Charleston area. With regard to the heroin trafficking, it was sold by brand name and packaging. The brand names included "Max Payne", "Gold Star", "Knock Out", and later, "SWAT". Some of these brands were packaged as "double seal" (in other words, a bindle sealed inside of a small heat sealed plastic bag). Gary Smith was monitored on the wire claiming that he was responsible for bringing the "Double Seal" concept to Charleston and also said he was the one responsible for "Max Payne", "Gold Star", "SWAT" and "Knockout".

One of the retail dealers that Mr. Smith sold to was Kenneth "Reno" Williams, who obtained grams and bundles. This relationship existed both before and after Gathers' murder. Based on wiretap information, during a two month period, Williams was recorded receiving at least 147 grams, which translates to 882 grams a year. Mr. Williams in turn not only sold heroin directly to a number of his own customers, he also had distributors working for him. Included in these groups were co-defendants Shawn Blount, Travis Wright, Bernard Jordan, and Ebony Roper. Mr. Williams had a distribution outlet at 1000 King Street, working out of Apartment #211A (the Palace). A number of other dealers bought heroin from Mr. Williams through Ebony Roper at this distribution location. These include Sara Eddleman, Patrick Colin Kavangh and Shaun Dubis, who were all part of a network supplying heroin to various individuals in Mt. Pleasant. Mr. Dubis was associated with the Palace as is shown in Call 9442, which shows a drug deal between Mr. Dubis and Mr. Williams being arranged for this location. Mr. Dubis is also linked to "Max Payne" brand heroin. This is demonstrated in Call 3046 (February 18, 2011), which is a call from Mr. Dubis to Mr. Williams (TARGET TELEPHONE (843) 534-8333) concerning Mr. Williams not having any "Max Payne" available.

### V. Factual Information Concerning Count 58 (21 USC §843)

On January 23, 2011, at approximately 5:18 p.m., Shaun Daniel Dubis sent an outgoing text message from 843-452-6897 to Kenneth Lamont Williams using TARGET TELEPHONE 5 (843-534-8333) (Call 273). The content of the text message read: "Need a b asap call me got this guy waiting." Mr. Williams was Mr. Dubis source of supply for heroin, and Mr. Dubis in turn distributed the heroin to other heroin users. In this text message, Mr. Dubis was requesting a "b," meaning one (1) "bundle" of heroin, because he had a heroin customer waiting on him.

### VI. Factual Information Concerning Count 60 (21 USC §843)

On January 27, 2011, at approximately 4:22 p.m., Mr. Dubis made an outgoing call on 843-452-6897 to Kenneth Lamont Williams using TARGET TELEPHONE 5 (843-534-8333) (Call 617). Mr. Dubis asked Mr. Williams, "Is it cool to come out there?" Mr. Williams replied, "Yeah." Mr. Dubis replied, "I'm a gonna probably be thirty minutes, I got to run around and pick up some loot." Mr. Williams replied, "Alright, you a, how many you had want so I can have them on me. In case I don't be there." Mr. Dubis replied, "I might need ten, but probably like eight." In this call, Mr. Dubis was asking Mr. Williams if he could meet with Mr. Williams to purchase approximately "eight" to "ten" "bindles" of heroin.

### VII. Factual Information Concerning Count 70 (21 USC §843)

On March 12, 2011, at approximately 4:22 p.m., Mr. Dubis received an incoming call on 843-452-6897 from Kenneth Lamont Williams using TARGET TELEPHONE 5 (843-534-8333) (Call 7822). Mr. Williams told Mr. Dubis, "I can't do six for a hundred, I got to do one ten." Mr. Dubis replied, "All I got is a buck." Mr. Williams replied, "You know I got other people coming to buy that it ain't going to make sense to give away a free bag. Come on. Come on." In this call, Mr. Williams was letting Mr. Dubis know that if Mr. Dubis was coming to purchase

"six" "bindles" of heroin, he was going to have to pay "one ten," meaning $110.00. Mr. Williams explained that he had other customers buying heroin from him so he was not going to "give away" the heroin.

                                                               Respectfully Submitted,

                                                               WILLIAM N. NETTLES
                                                               UNITED STATES ATTORNEY

By: S/: *Sean Kittrell*_____

                                                               Sean Kittrell (#6032)
                                                               Assistant United States Attorney
                                                               Violent Crime Task Force
                                                               151 Meeting Street, Suite 200
                                                               Charleston, South Carolina, 29402

By: S/: *Stephanie Linder*_____

                                                               Stephanie Linder
                                                              Special Assistant United States Attorney

Charleston South Carolina
August 11, 2012